**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

| | | |
|---|---|---|
| LISA W.,[1] | : | Case No. 1:25-cv-416 |
| Plaintiff, | : | |
| vs. | : | District Judge Susan J. Dlott<br>Magistrate Judge Peter B. Silvain, Jr. |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[2]

Plaintiff Lisa W. brings this case challenging the Social Security Administration's denial of her application for a period of disability and Disability Insurance Benefits. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #9), and the administrative record. (Doc. #7).

## I. <u>Background</u>

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.
[2] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

Plaintiff applied for benefits on May 25, 2022, alleging disability commencing June 15, 2019, due to several impairments, including lumbar degenerative disc disease, cervical degenerative disc disease, headaches, radiculopathy, depression, left knee osteoarthritis, and anxiety. (Doc. #7, *PageID* #269). After Plaintiff's application was denied initially and upon reconsideration, she requested and received an online video hearing before Administrative Law Judge (ALJ) Leslie Perry-Dowdell on February 22, 2024. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1420. She reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful activity since June 15, 2019, the alleged onset date.

Step 2: She has the following severe impairments: degenerative disc disease (DDD), hypertension, and obesity.

Step 3: She does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity (RFC), or the most she can do, despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work as defined in 20 CFR 404.1567(b) except occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds; frequently balance and occasionally stoop, kneel, crouch, and crawl; no overhead reaching, avoid all exposure to hazards such as heights and machinery, no commercial driving with a sit/stand option allowing her to change positions every hour but remain on task."

Plaintiff is unable to perform any past relevant work.

Step 5: Considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

(Doc. #7, *PageID* #s 42–54). Based on these findings, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since June 15, 2019. *Id.* at 54.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #7, *PageID* #s 36-58), Plaintiff's Statement of Errors (Doc. #8), and the Commissioner's Memorandum in Opposition (Doc. #9). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II. **Standard of Review**

Judicial review of an ALJ's decision is limited to whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec*., 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow

its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## III. **Discussion**

Plaintiff alleges that the ALJ failed to "properly evaluate [Plaintiff]'s physical disabilities and in turn improperly evaluated the opinion evidence of record." (Doc. #8, *PageID* #480). Specifically, Plaintiff contends that the ALJ inappropriately dismissed and failed to adequately explain her decision to reject the medical opinions of Robert Hammond, OTR/L, CFCE, QJDA (occupational therapist and functional capacity evaluator); Brandon Grant, CNP; and Liju John, M.D. *Id.* at 480-86. These medical opinions opined limitations that were more restrictive than the adopted RFC. *Id.* In response, the Commissioner maintains that the ALJ properly considered the record as a whole and identified substantial evidence to support her RFC findings. (Doc. #9, *PageID* #s 490–501).

A plaintiff's RFC is an assessment of "the most [a plaintiff] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1) (2012). A plaintiff's RFC assessment must be based on all the relevant evidence in his case file. *Id.* The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including

those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 404.1520c(c)(1)–(5).

Supportability and consistency are the most important of the five factors. 20 C.F.R. § 404.1520c(b)(2). While the regulations state that ALJs "*may* … explain how [they] considered" the other various factors, these same regulations mandate that an ALJ "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings." 20 C.F.R. § 404.1520c(b)(2) (emphasis added). Supportability "concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Kenneth M. v. Comm'r of Soc. Sec.*, 2025 WL 1948987, at *12 (S.D. Ohio July 16, 2025) (Preston Deavers, M.J.), quoting *Reuse v. Comm'r of Soc. Sec.*, 2021 WL 1697919, at *7 (N.D. Ohio Apr. 29, 2021) (internal citations omitted). When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(2). Failing to discuss either supportability or

consistency requires remand. *Kenneth M.*, 2025 WL 1948987, at *12; *Whalen v. Comm'r of Soc. Sec.*, 2025 WL 1452713, at *17 (N.D. Ohio May 21, 2025), *report and recommendation adopted*, No. 1:24-CV-1928, 2025 WL 1756524 (N.D. Ohio June 25, 2025) ("An ALJ may discuss one adequately but not the other, thus requiring remand.").

An ALJ must "provide a coherent explanation of [her] reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021), and "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec*., 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)); *Decorian P.R. v. Comm'r of Soc. Sec. Admin.*, 2024 WL 1155941, at *5 (S.D. Ohio Mar. 18, 2024) (internal citation omitted). An "ALJ's failure to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [the plaintiff's] disability determination was supported by substantial evidence." *Warren I.*, 2021 WL 860506, at *8. The ALJ bears the burden of "show[ing] his or her work"; in other words, the ALJ must "explain in detail *how the factors actually were applied* in each case, to each medical source." *Kenneth M.*, 2025 WL 1948987, at *12 (citing *Hardy v. Comm'r of Soc. Sec.*, 554 F.Supp.3d 900, at *6 (E.D. Mich. 2021)); *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-00326, 2023 WL 1009135, at *5 (S.D. Ohio Feb. 15, 2023) (Gentry, M.J.) (internal citations omitted).

**A. Robert Hammond, OTR/L, CFCE, QJDA**

Plaintiff attended a functional capacity evaluation (FCE) with Mr. Hammond on February

24, 2022.[3] (Doc. #7, *PageID* #s 337–68). Plaintiff reported that she had been in a motor vehicle accident in 2015 and her "neck and back hurts when [she] do[es] anything," adding that "[p]ain limits [her] ability to do daily activities." *Id.* at 338. In his "Physical Work Performance Evaluation," (*id.* at 337–68), Mr. Hammond noted that Plaintiff drove herself to the evaluation and that her "[g]ait pattern leaving the evaluation [was] increasingly antalgic compared to gait pattern used upon arriving for test." *Id.* at 340. Mr. Hammond also noted that conservative treatment options for Plaintiff, i.e. physical therapy and injections, did not improve her symptoms. *Id.* After examining Plaintiff, Mr. Hammond opined that Plaintiff cannot perform the full range of sedentary work due to difficulties meeting the dynamic strength and mobility demands of work. *Id.* at 337.

Upon her review, the ALJ found Mr. Hammond's opinion "not persuasive." *Id.* at 50.

Plaintiff alleges that the ALJ inappropriately disregarded Mr. Hammond's opinion "solely based on the frequency of visits" and failed to address consistency. (Doc. #8, *PageID* #481). However, the ALJ's opinion, when read as a whole, tells a different story; rather, the ALJ dismisses Mr. Hammond's findings as "not persuasive" through her consideration of the factors of supportability and consistency. (Doc. #7, *PageID* #50).

First, the ALJ considers the supportability of Mr. Hammond's opinion by finding that the only objective evidence and supporting explanations used to formulate it was the one-time examination of Plaintiff in February 2022. *Id.*; *see* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source

[3] Plaintiff's Statement of Errors indicates that Dr. Hammond's examination of Plaintiff occurred on February 24, 2022. (Doc. #8, *PageID* #476). Dr. Hammond's records also reflect that the examination occurred in February 2022. (Doc. #7, *PageID* #337). The ALJ's opinion, however, reflects that the examination occurred on April 24, 2022. *Id.* at 50. Typographical or scrivener's errors such as these are held harmless when the ALJ's meaning is clear in context. *Calkins v. Sec'y of Health & Hum. Servs.*, No. 85-5685, 1986 WL 17083, at *2 (6th Cir. May 7, 1986).

are to support his or her medical opinion(s) …, the more persuasive the medical opinions or prior administrative medical finding(s) will be.”). Next, the ALJ considered the consistency of Mr. Hammond’s opinion by stating that the examination and opinion are

> *inconsistent with* the MER that supports [Plaintiff’s] ability to perform a range of light work, as defined herein, and demonstrated by throughout the record, she denied joint swelling and limitation of motion, no spinal tenderness, scoliosis, or kyphosis, and full range of motion (ROM) (e.g., Ex. B1F/10, 16, 22, 25, 27) and examinations throughout the record were essentially normal with no focal deficits, gross motor was intact throughout with full (5/5) strength and SLR was negative (Ex. B4F/13, 17, 20, 23, 26, 29-30; and B9F/2, 6, 11).

(Doc. #7, *PageID* #50). (emphasis added). The ALJ’s decision clearly contemplates the factors of supportability and consistency and considers the evidence already in the record, which is summarized throughout her decision. *Id.* The ALJ’s analysis of Mr. Hammond’s opinion is sufficient to build a logical bridge between the evidence, and the ALJ has met the minimum level of articulation necessary to avoid frustrating the court’s ability to determine whether the ALJ’s findings are sufficiently supported by substantial evidence. *Id.*; *Warren I. v. Comm’r of Soc. Sec.*, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021); *See Ison v. Comm'r of Soc. Sec.*, No. 2:16-CV-464, 2017 WL 4124586, at *13 (S.D. Ohio Sept. 18, 2017) (Marbley, D.J.) (explaining that “[t]he Sixth Circuit does not require remand where an ALJ provides minimal reasoning at step three of the five-step inquiry.”) (internal citation omitted).

Therefore, ALJ Perry-Dowdell did not err in her treatment of Mr. Hammond’s opinion, and the ALJ’s decision is supported by substantial evidence.

**B. Brandon Grant, CNP**

Nurse Grant is Plaintiff’s primary care provider. (Doc. #7, *PageID* #s 311–36). He treated

Plaintiff for her lumbar and cervical degenerative disc disease beginning in 2018. *Id.* Nurse Grant completed a physical residual functional capacity form on April 26, 2022, in which he indicated that—due to her low back pain, neck pain, and limited range of motion—Plaintiff was limited to standing and walking for less than two hours total in an eight-hour workday, limited to sitting for less than two hours total in an eight-hour workday, required a sit/stand (at will) option and unscheduled breaks, could never work around heights, and would miss more than four days of work per month. *Id.* at 369–73.

The ALJ found Nurse Grant's opinion "not persuasive." (Doc. #7, PageID # 50).

Plaintiff takes issue with the ALJ's treatment of Nurse Grant's opinion, asserting that "[i]t is unclear what exactly in these examinations were 'normal' and unsupportive of Grant's opinion that [Plaintiff] would struggle to maintain work due to her severe physical impairments." (Doc. #8, *PageID* #482).

Like her treatment of Mr. Hammond's findings, the ALJ bases her findings of persuasiveness on the factors of supportability and consistency. (Doc. #7, *PageID* #50). First, the ALJ indicates that Nurse Grant's opinion "is not supported by his treatment records of [Plaintiff] that show examinations were essentially normal and showed she denied joint swelling and limitation of motion, not spinal tenderness, scoliosis, or kyphosis, and full range of motion (ROM)." *Id.* (citing *Id.* at 319, 325, 331, 334, 336). At each of these citations, and throughout Nurse Grant's various reports, he indicates normal examinations findings. *See e.g. id.* at 310–36, 447–67 (noting "no spinal tenderness, sco[]liosis[,] or kyphosis"; "no gross deformity" and "range of motion grossly intact" across all extremities; and normal results in a number of other areas

including neck, head and face, and more). Next, the ALJ finds that Nurse Grant's opined limitations are "inconsistent with the MER that supports [Plaintiff's] ability to perform light work" with a number of exceptions, including

> no overhead reaching, occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds; frequently balance and occasionally stoop, kneel, crouch, and crawl; avoid all exposure to hazards such as heights and machinery, no commercial driving, and with a sit/stand option allowing her to change positions every hour but remain on task, as demonstrated by ongoing struggles with DDD and obesity

*Id.* at 50. The ALJ again points to evidence from other sources that indicates that Plaintiff's examinations were largely normal, noting "no focal deficits, gross motor was intact throughout with full (5/5) strength and SLR was negative." *Id.* (citing *Id.* at 386, 390, 393, 396, 399, 402–03, 436, 440, 445). The ALJ's analysis of Nurse Grant's opinion is sufficient to build a logical bridge between the evidence, and the ALJ has met the minimum level of articulation necessary to avoid frustrating the court's ability to determine whether the ALJ's findings are sufficiently supported by substantial evidence. *Id.*; *Warren I.*, 2021 WL 860506, at *8; *See Ison*, 2017 WL 4124586, at *13.

Therefore, ALJ Perry-Dowdell properly and adequately evaluated Nurse Grant's opinion, and the ALJ's findings are supported by substantial evidence.

**C. Liju John, M.D.**

After treating Plaintiff for a year, Dr. John, an orthopedic specialist, completed a physical RFC report in May 2022. (Doc. #7, *PageID* #s 406-10). Dr. John noted that Plaintiff had cervical stenosis with neck pain radiating into the left upper extremity, cited an MRI of her cervical spine showing a disc bulge, and described her pain and the treatment she received for it. *Id.* at 406. When

asked about her prognosis, Dr. John indicated "NA" (not applicable) because she "would need updated MRI of cervical spine with evaluation from neurosurgery to state." *Id.* When asked to what degree Plaintiff could tolerate work stress, he responded that, per Plaintiff's functional capacity evaluation, she was unable to perform sedentary work. *Id.* Dr. John opined that Plaintiff's symptoms would consistently interfere with her attention and concentration during a workday and that she was incapable of even low-stress jobs. *Id.* at 407-08. The remainder of the form was not completed. *Id.*

The ALJ found Dr. John's opinion "not persuasive." (Doc. #7, *PageID* #50).

Plaintiff takes issue with the ALJ's treatment of Dr. John's opinion, again arguing that "it is unclear what exactly from the examination history is out of step with the ultimate functional capacity evaluation" and the ultimate conclusion that Plaintiff is "unable to perform sedentary work." (Doc. #8, *PageID* #s 482–83).

Again, the ALJ plainly builds a logical and articulate bridge from the evidence in the record to her findings. (Doc. #7, *PageID* #s 50–51). First, the ALJ finds that Dr. John's opinion not supported by his own treatment records, which contain normal examinations and show no focal deficits, negative straight leg raises, and intact gross motor findings with full strength. (Doc. #7, *PageID* #51) (citing *id.* at 386–87, 390, 393, 396, 399, 402-03, 436-37, 440–41, 445). The ALJ also highlights normal psychiatric examinations showing that her mood and affect were normal throughout treatment. *Id.* at 52 (citing *id.* at 314, 317–18, 386, 390, 393, 396, 399, 402, 436, 438, 440, 445). The ALJ found that the medical evidence of record supported no mental limitations in relation to Dr. John's statement that Plaintiff was incapable of even low-stress jobs. *Id.* at 51.

Next, in finding Dr. John's opined limitations inconsistent with the record, the ALJ points to a consultative psychological examination with Amanda Conn, Psy.D., where Plaintiff reported some feeling of sadness when thinking about "certain things" and sleeping less when feeling sad. *Id.* (citing *id.* at 418–19). The ALJ noted that Plaintiff denied any other symptoms of depression and stated that her sadness typically only lasted "a couple hours." *Id.* The ALJ found that Plaintiff appeared attentive with intact concentration, her memory functioning (specifically her working memory) appeared somewhat impaired, her capacity for sound judgment did not appear overtly impaired, her insight seemed good, and her intelligence fell within the average range. *Id.* at 418–21. Dr. Conn found, and the ALJ noted, that Plaintiff's prognosis was good and that her symptoms would likely improve if she engaged in mental health counseling. *Id.* (citing *Id.* at 421).

Therefore, ALJ Perry-Dowdell properly and adequately evaluated Dr. John's opinion, and the ALJ's findings are supported by substantial evidence.

### D. Plaintiff's Testimony

When a plaintiff alleges symptoms of disabling severity, the ALJ must follow a two-step process for evaluating those symptoms. *See* 20 C.F.R. § 404.1529; Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, *2-3 (October 25, 2017).[4] First, the ALJ must determine whether the individual has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical

[4] SSR 16-3p, which "provides guidance about how [the SSA] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms," superseded SSR 96-7p and became applicable to decisions issued on or after March 28, 2016. *See* SSR 16-3p, 2017 WL 5180304 (October 25, 2017) (clarifying applicable date of SSR 16-3p).

evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. *See also* 20 C.F.R. § 404.1529(c)(3).

In performing this assessment, the ALJ is not required to analyze all seven factors but must still show that he considered the relevant evidence. *Roach v. Comm'r of Soc. Sec*., No. 1:20-CV-01853-JDG, 2021 WL 4553128, at *10–11 (N.D. Ohio Oct. 5, 2021). Indeed, the ALJ's assessment of an individual's subjective complaints and limitations must be supported by substantial evidence and be based on a consideration of the entire record. *Rogers*, 486 F.3d at 247; *see also Millsap v. Comm'r of Soc. Sec*., No. 3:19-cv-197, 2020 WL 6275948, at *3 (S.D. Ohio May 27, 2020) (Ovington, M.J.), *report and recommendation adopted*, No. 3:19-cv-197, 2020 WL 6273402 (S.D. Ohio Oct. 26, 2020) (Rice, D.J.). Nonetheless, it remains the province of the ALJ and not the reviewing court to assess the consistency of subjective complaints about the impact of a plaintiff's symptoms with the record as a whole. *Rogers*, 486 F.3d at 247; *see also Huguely v. Comm'r of Soc. Sec.*, No. 3:08-cv-113, 2009 WL 816600, at *4 (S.D. Ohio Mar. 25, 2009) (Merz, M.J.), *report and recommendation adopted*, No. 3:08-cv-113, 2009 WL 816600 (S.D. Ohio Mar. 25, 2009) (Rice, D.J.). Therefore, "absent a compelling reason," an ALJ's credibility/consistency determination will not be disturbed. *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

In this case, the ALJ determined that Plaintiff has a number of medically determinable physical impairments that could reasonably be expected to produce the symptoms alleged. (Doc. #7, *PageID* #42). Regarding the intensity, persistence, and functional limitations of those symptoms, Plaintiff provided testimony, which the ALJ considered in formulating Plaintiff's RFC. *Id.* at 47, 52. In her testimony, Plaintiff alleged disability as a result of her lumbar and cervical degenerative disc disease, headaches, radiculopathy, depression, left knee osteoarthritis, anxiety, and obesity. *Id.* at 47. Plaintiff also testified regarding various limitations to her activities of daily living including not being able to lift/carry a gallon of milk—which requires her son to help her with grocery shopping—and not being able to stand for prolonged periods of time due to back pain—which requires her children to help with household chores, including doing the dishes. *Id.*

The ALJ adequately considered Plaintiff's testimony, noting a lack of persuasive corroborating evidence for duration, frequency, or intensity of either the symptoms or the limitations. *Id.* The ALJ also noted that there did not appear to be objective evidence of a physiological abnormality that could be reasonably expected to result in the degree of limitation alleged. *Id.* Finally, the ALJ highlighted Plaintiff's conservative treatment and recommendations, which suggested that the symptoms were not as limiting as Plaintiff alleged in her testimony. *Id.* The ALJ also emphasized that Plaintiff lives with her husband and two children; holds a valid driver's license and "gets around" by driving herself; does not require reminders to complete personal care tasks; attends band performances at her children's school, goes to church, and outings for fun with her family. *Id.* The ALJ also opined that Plaintiff can manage money, count

change, and pay her bills; can attend medical appointments; can use the internet and read; and can visit with friends and family, and receive visits from friends and family. *Id.*

The ALJ's consideration was proper. *Showalter v. Kijakazi*, No. 22-5718, 2023 WL 2523304, at *3 (6th Cir. Mar. 15, 2023) (explaining that "[a]n ALJ must consider how closely a claimant's self-reported symptoms line up with objective medical evidence and other evidence in the record.") *See also*, SSR 16-3p, 2016 SSR LEXIS 4, 2017 WL 5180304, at *5 (explaining that "objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities…."). The ALJ's reliance on objective evidence was also substantially supported by the record, which is discussed at length above. Therefore, ALJ Perry-Dowdell properly and adequately considered Plaintiff's testimony, and the ALJ's findings are supported by substantial evidence.

In sum, "It is the ALJ's duty, not the Court's, to resolve conflicts in the medical evidence, and the Court must uphold the ALJ's decision if it is supported by substantial evidence, even when there is substantial evidence to support the opposite conclusion or a reviewing court would resolve the issues of fact differently." *See Sandra B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-960, 2022 WL 444724, at *8 (S.D. Ohio February 14, 2022) (Litkovitz, M.J.) (citing *Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 398 (6th Cir. 2016)). Here, substantial evidence supported the ALJ's resolution of the conflict in the medical opinions. *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("When viewed as a whole, however, the ALJ's decision shows that she indeed weighed all of the mental-health opinions presented to her ... the ALJ's opinion on a whole was

consistent with the regulations."). Accordingly, for the above reasons, Plaintiff's Statement of Errors is not well taken.

Based on the foregoing, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's decision.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be **AFFIRMED**; and

2. The case be terminated on the Court's docket.

July 29, 2026

*s/ Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).